UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

VIRGIL GOODSON,

        Plaintiff,

v.                                                     Case No. 5:17-cv-10-Oc-37PRL

OS RESTAURANT SERVICES, LLC,

        Defendant.

## ORDER

This matter is before the Court on the following: (1) Defendant OS Restaurant Services, LLC's Motion to Dismiss Counts I and II and Supporting Memorandum of Law (Doc. 5), filed January 18, 2017; and (2) Plaintiff's Response to Defendants [sic] Motion to Dismiss Count I and II of the Complaint (Doc. 11), filed January 31, 2017.

### I.    BACKGROUND

In a five-count Complaint, restaurant server Virgil Goodson claims that his former employer, Defendant OS Restaurant Services, LLC, violated overtime and minimum wage provisions of the Fair Labor Standards Act ("**FLSA**"), Article X, § 24(c) of the Florida Constitution ("**Article X**"), and the Florida Minimum Wage Act, Florida Statutes ("**FMWA**"). (*See* Doc. 2.) Alleging that Defendant improperly took a "tip credit" against Plaintiff's wages while requiring Plaintiff to spend more than 20% of his time in non-tipped work activities, Plaintiff asserts "Incidental Non-Tipped Labor" minimum wage claims under the FMWA and Article X ("**Non-Tipped Labor Claims**"). (*See id*. ¶¶ 17–52

("**Count I**"); *id*. ¶¶ 35–52 ("**Count II**").) Defendant moved to dismiss these claims as legally insufficient (Doc. 5 ("**Motion**")), and Plaintiff responded (Doc. 11 ("**Response**")).

There is no dispute that legally insufficient claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).[1] Here, the legal sufficiency of Plaintiff's two Non-Tipped Labor Claims turn on the following question:

> Can tipped employees state unpaid wage claims under Article X and the FMWA based on the "**20% Rule**" set forth in § 30d00(e) of the Field Operations Handbook ("**Handbook**") issued by the U.S. Department of Labor ("**DOL**")?

(*See* Doc. 5; *see also* Doc. 11, pp. 4–5.) Defendant answers **no**. (*See* Doc. 5.) Plaintiff answers **yes**. (*See* Doc. 11.) Although this Court and others have previously applied the 20% Rule in several unpublished opinions, no binding precedent dictates which answer is correct.[2] To resolve the issue as a matter of first impression, the Court must answer the following administrative law question: **Is the 20% Rule entitled to deference as a permissible interpretation of the FLSA?** For the reasons set forth below, the Court finds that the answer to this question is yes; thus, the Motion is due to be denied.

## II. ADMINISTRATIVE LAW

When Congress has not directly spoken to a specific issue through legislative

---

[1] The question whether a claim is legally sufficient—that is, authorized by law—is properly addressed at the pleading stage. *See Town of Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748, 178 (2005).

[2] *See May v. Steak N Shake Operations, Inc.*, No. 3:14-cv-912-J-32JRK, 2014 WL 7251637, at *2 (M.D. Fla. Dec. 18, 2014) (noting that some "district courts in this circuit" have applied the 20% Rule, but the question has not been addressed in "binding precedent").

enactment, administrative agencies like the DOL "often must interpret the enactments Congress has charged them with enforcing and implementing." *Gonzales v. Or.*, 546 U.S. 243, 255 (2006).[3] An agency's interpretations may issue as: (1) formal "**Rules**" or "**Regulations**," which are published in the Code of Federal Regulations ("**Code**"); and (2) informal "**Sub-Regulations**," which may appear in opinion letters, handbooks, and other papers issued by the DOL.

When a Rule is promulgated in accordance with the formal "notice and comment" rule-making provisions of the Administrative Procedure Act ("**APA**"),[4] it is a

---

[3] *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2124–25 (2016) (noting that courts and agencies both "must give effect to the unambiguously expressed intent of Congress").

[4] Under the APA, a "**Rule**" includes statements of "'general or particular applicability and future effect' that are designed to 'implement, interpret, or prescribe law or policy.'" *See* 5 U.S.C. § 551(4). "**Rule making**" refers to the "agency process for formulating, amending, or repealing a rule." *Id.* § 551(5). Pursuant to § 553 of the APA, formal "notice and comment" rule making requires that the agency:

(1) publish a "[g]eneral notice of proposed rule making" in the Federal Register, which notice must include information concerning public proceedings, reference to the legal authority for the proposed rule, and a summary of the proposed rule; and

(2) "give interested persons an opportunity to participate in the rule making through submission of [specified comments]; and

(3) consider the relevant comments and then "incorporate in the rules adopted a concise general statement of their basis and purpose."

*See id.* § 553(b); *see also Perez v. Mortg. Bankers Assoc.*, 135 S. Ct. 1199, 1203 (2015).

-3-

"**Legislative Rule**," which has the "force and effect of law."[5] A Rule that issues without formal notice and comment rule-making is an "**Interpretive Rule**" that is merely intended to "advise the public of the agency's construction of the statutes and rules which it administers."[6] Rules, Regulations, and Sub-Regulations are entitled to varying degrees of deference, which courts must discern. *See Coke*, 551 U.S. at 165 (advising that courts must accept administrative "policy" and "rules" that "reasonably" fill "any gap left, implicitly or explicitly by Congress" to the agency").

    A.    *Chevron* **Deference**

Under *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 844 (1984), courts afford the highest degree of deference—*Chevron* **Deference**—to regulations "when an agency properly exercises its authority, expressly or implicitly delegated by Congress, to interpret an ambiguous statute" by promulgating "rules and regulations carrying the force of law." *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1320 (11th Cir. 2011) (declining to afford deference to a regulation that concerned an *unambiguous* statutory provision).[7] Regulations afforded *Chevron* Deference are "controlling . . . unless they are arbitrary, capricious, or manifestly contrary to the

---

[5]*See Perez*, 135 S. Ct. at 1203 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03 (1979); *see also* 5 U.S.C. § 553.

[6]*See Perez*, 135 S. Ct. at 1203–04 (noting that the "precise meaning" of Interpretive Rule is an unresolved issue debated by judges and scholars alike); *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 172 (2007) (explaining that—as a class—Interpretive Rules "may persuade," but will not "bind" the courts); *see also* 5 U.S.C. § 553(b)(A); *infra*, n.8.

[7]*See Gonzalez*, 546 U.S. at 258 ("If a statute is ambiguous, judicial review of administrative rulemaking often demands *Chevron* [D]eference."); *U.S. v. Mead Corp.*, 533 U.S. 218, 226 (2001).

statute." *See Chevron*, 467 U.S. at 844.

   B.   *Auer* **Deference**

Under *Auer v. Robbins*, 519 U.S. 452, 461–63 (1997), courts afford "substantial deference"—"***Auer* Deference**"—to administrative pronouncements that interpret "the issuing agency's own ambiguous regulation." *See Gonzalez*, 546 U.S. at 255. Courts do not afford *Auer* Deference to interpretations of regulations that merely "restate the terms of the statute itself." *See id.* at 256. Rather, the interpreted regulation must give "specificity to a statutory scheme [that the agency] was charged with enforcing" and it must reflect "the considerable experience and expertise [the agency] had acquired over time with respect to the [statute]." *See id*. Administrative pronouncements that are entitled to *Auer* Deference are "controlling unless plainly erroneous or inconsistent with the regulation." *See Auer*, 519 U.S. at 461; *Falken v. Glynn Cty., Ga.*, 197 F.3d 1341, 1350 (11th Cir. 1999) ("We must defer to the DOL's interpretation of its FLSA regulations unless the interpretation is 'plainly erroneous or inconsistent with the regulation.'").

   C.   *Skidmore* **Deference**

Under *Skidmore v. Swift & Company*, 323 U.S. 134, 140 (1944), courts defer to Interpretive Rules and Sub-Regulations—but only to the extent that such pronouncements have the "power to persuade" ("***Skidmore* Deference**"). *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)).[8] The

---

[8]*See also Gonzales*, 546 U.S. at 268–69; *Whirlpool Corp. v. Marshall*, 445 U.S. 1, 11 (1980) (stating that Interpretive Regulations are "entitled to deference unless it can be said not to be a reasoned and supportable interpretation of the [FLSA]"); *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1210 (11th Cir. 2015) (holding that a pronouncement in a

"power to persuade" turns on "*Skidmore* **Factors**," including: (1) the "thoroughness" evident in the agency's consideration of its interpretation and the validity of its reasoning, *see Skidmore*, 323 U.S. at 140; (2) how consistent the interpretation is "with earlier and later pronouncements," *see id.*; (3) the level of "expertise" the agency has in the regulated area, *see Gonzales*, 546 U.S. at 269; (4) the "length of time" the agency has maintained its interpretation;[9] (5) whether the interpretation has been accepted by the federal courts, *see Schuman*, 803 F.3d at 1209; and (6) "all those factors which give [the interpretation] power to persuade, if lacking power to control," *see Skidmore*, 323 U.S. at 140.

### III. DISCUSSION

According to Defendant, it cannot be held liable for violating the 20% Rule because the "so-called rule" does not "carry the force of law" and it deserves no "respect or deference whatsoever." (Doc. 5, pp. 3, 7.) In support, Defendant contends that:

> (1) "Congress never specified in the text of the FLSA itself that the use of the tip credit was subject to a '20% rule'" (*id.* at 6);

---

DOL Field Operations Handbook was entitled to *Skidmore* deference "at most"); *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1279, n.15 (11th Cir. 2012) (noting that an amicus brief submitted by the DOL "is entitled to, at most, *Skidmore* [D]eference"); *Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009) (noting that agency "opinion letters" are entitled to *Skidmore* Deference only to the extent that they have the "power to persuade"); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1268, n.5 (11th Cir. 2008) (noting that the court and parties erred in characterizing an interpretive "bulletin" published in the Code as a "regulation" entitled to *Chevron* Deference when only *Skidmore* Deference was warranted); *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1255–56 (11th Cir. 2001) (finding provision of DOL Field Operations Handbook persuasive under *Skidmore*).

[9]*See Kasten v. Saint-Govain Performance Plastics Corp.*, 563 U.S. 1, 15–16 (2011); *Ramos-Barrientos v. Bland*, 661 F.3d 587, 598 (11th Cir. 2011) (noting that agency interpretations of longstanding duration are afforded deference under *Skidmore*).

(2) no "official interpretive bulletins issued by the Secretary" has referenced the 20% Rule (*id*. at 8);

(3) the 20% Rule appears only in a Handbook that was not "developed after 'notice-and-comment rulemaking'" and "was never intended by the DOL as a means to establish interpretive policy";

(4) the Dual Job Regulation itself is merely an interpretive "bulletin" entitled to *Skidmore* Deference at most; and

(5) imposing liability on employers like Defendant based on the 20% Rule "would violate the doctrine of the separation of powers, as it would allow the DOL to usurp Congress's role and insert new substantive requirements into the FLSA."

(*See* Doc. 5, pp. 6–12.) Defendant also argues that analysis of the *Skidmore* Factors establish that the 20% Rule is entitled to no deference because it has no power to persuade. (*See id*.)

Plaintiff counters that unpublished decisions from district courts located in Florida—which have permitted similar incidental non-tipped labor claims—are binding authority and are fatal to Defendant's arguments.[10] This argument is easily rejected because the law is clear that: (1) "only the decisions of the Supreme Court and [U.S. Court of Appeal for the Eleventh Circuit] are binding on the district courts of the [Eleventh Circuit];"[11] and (2) "unpublished opinions are *not considered binding precedent*"—although "they may be cited as persuasive authority." *See* 11TH CIR. R. 36-2.[12]

---

[10](*See* Doc. 11, pp. 4–7 (discussing *Crate v. Q's Rest. Group, LLC*, No. 8:13-cv-2549-T-24EAJ, 2014 WL 10556347, at *3 (M.D. Fla. May 2, 2014) and *Schamis v. Josef's Table, LLC*, 2014 WL 1463494, at *4 (S.D. Fla. Apr. 15, 2014)).

[11]*See Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1240, n.15 (11th Cir. 2002).

[12]*See United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012); *see also White v. NIF Corp.*, No. 15-322-WS-N, 2017 WL 210243, *5 (S.D. Ala. Jan. 18, 2017).

Plaintiff also argues that the Court should—as other courts have done—follow the U.S. Court of Appeals for the Eighth Circuit's decision in *Fast v. Applebee's International, Inc.*, 638 F.3d 872, 880–81 (8th Cir. 2011), which addressed "and rejected" the same arguments raised by Defendant here. (*See* Doc. 11, pp. 7–9.) Anticipating Plaintiff's reliance on *Fast*, Defendant argues that *Fast* was "wrongly decided" in that the *Fast* Court: (1) afforded the Dual Job Regulation *Chevron* Deference and failed to recognize—due to the *Fast* parties' agreement concerning application of *Chevron*—that the Dual Job Regulation is an Interpretive Rule entitled to only *Skidmore* Deference; and (2) "compounded its [initial error] by awarding *Auer* deference" to the 20% Rule. (*See* Doc. 5, pp. 14–15.)

Although it is not binding authority, as directed by the Eleventh Circuit, this Court must carefully review the *Fast* decision and give it due respect. *See Arriaga*, 305 F.3d at 1240, n.15. The *Fast* plaintiffs—like the Plaintiff here—worked in a restaurant for tips and relied on the 20% Rule to assert unpaid wage claims against their employer ("**Fast Claims**"). *Fast*, 638 F.3d at 874–75. Arguing that the 20% Rule did not support such claims as a matter of law, the *Fast* defendant moved for summary judgment, which the district court denied after concluding that the 20% Rule "was reasonable, persuasive, and entitled to deference." *See id*.

The *Fast* defendant filed an interlocutory appeal, and the Eighth Circuit affirmed the district court's decision. *See id*. In agreeing with the district court that the 20% Rule was valid and entitled to deference, the *Fast* Court initially determined that the Dual Job Regulation is a Legislative Rule entitled to *Chevron* Deference. *See id*. at 877. Then, the *Fast*

Court determined that the 20% Rule reasonably clarified various ambiguities in the Dual Job and other Tip Credit Regulations. *See id*. at 879–80. As such, the *Fast* Court afforded the 20% Rule *Auer* Deference and determined that it "certainly is not 'clearly erroneous or inconsistent with the [Tip Credit Interpretations]." *See id*. at 881. Concluding that the 20% Rule provided a valid legal basis for the *Fast* Claims based on *Auer*, the *Fast* Court did not explicitly address the *Skidmore* Factors. *See id*. at 879–81.

The *Fast* Court's analysis of the 20% Rule has rarely been criticized.[13] Rather, it has been relied on and cited favorably by courts across the country.[14] Although this Court agrees with the majority position and finds *Fast* persuasive,[15] it will nonetheless address

---

[13] District courts in Arizona appear to take the minority position in rejecting the *Fast* decision. *See Kirchgessner v. CHLN, Inc.*, 174 F. Supp. 3d 1121, 1126–30 (D. Az. 2016); *Montijo v. Romulus Inc.*, No. CV-14-264-PHX-SMM, 2015 WL 1470128, at *9 (D. Az. Mar. 31, 2015); *Schaefer v. P.F. Chang China Bistro, Inc.*, No. CV-14-185-PHX-SMM, 2014 WL 3809069, at *6 (D. Az. Aug. 1, 2014).

[14] *See Romero v. Top-Tier Colo., LLC*, 849 F.3d 1281, 1282–84 (10th Cir. 2017) (reversing dismissal of wage claims premised on the 20% Rule); *Barnhart v. Chesapeake Bay Seafood House Assocs., LLC*, No. JFM-16-01277, 2017 WL 1196580, at *5–6 (D. Md. Mar. 31, 2017); *Knox v. Jones Group*, 201 F. Supp. 3d 951, 960–61 (S.D. Ind. 2016) (deferring to 20% Rule and denying motion to dismiss Tipped Employee claims); *McLamb v. High 5 Hosp.*, 197 F. Supp. 3d 656, 662–63 (D. Del. 2016) (same); *Cope v. Let's Eat Out, Inc.*, No. 6:16-cv-3050-SRB, 2016 WL 3466140, at *4–*5 (W.D. Mo., June 21, 2016) (same); *Flood v. Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 583–84 (S.D. N.Y. 2015) (same); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 733–34 (D. S.C. 2015) (same); *see also Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (noting that the 20% Rule reflects the DOL's interpretation of 29 U.S.C. § 203(m) and the Dual Job Regulation).

[15] *See White*, 2017 WL 210243, *4 (finding the *Fast* approach to Tipped Employee wage claims "persuasive"); *see Bowe v. HHJJ, LLC*, No. 6:16-cv-1844-Orl-37KRS, 2017 WL 56401, at *1 (M.D. Fla. Jan. 5, 2017) (approving magistrate judge's recommended finding that the 20% Rule controls because it "is a reasonable interpretation of [the Dual Job Regulation]"); *Crate*, 2014 WL 10556347, at *3 (denying motion to dismiss claim premised on the 20% Rule); *Schamis*, 2014 WL 1463494, at *4 (S.D. Fla. Apr. 15, 2014) (same); *Ide v. Neighborhood Rest. Partners, LLC*, 32 F. Supp. 3d 1285, 1293 (N.D. Ga. 2014), *aff'd*, 667 F. App'x 746 (11th Cir. 2016)); *see also Martins v. MRG of S. Fla.,*

the issues raised by the parties here that were not addressed by the *Fast* Court.

The analysis must start with the text of the FLSA itself.[16] *See Gonzalez*, 546 U.S. at 258–59. Since it was enacted by Congress in **1938**, the FLSA has required that employers pay their employees a set hourly minimum wage ("**Minimum Wage Rule**"). *See* 29 U.S.C. § 206(a)(1). In **1966**, Congress added provisions to the FLSA—§§ 203(m) and (t) ("**Tip Credit Provisions**")—which created an exception to the Minimum Wage Rule ("**Tip Credit**") for employees "*engaged in an occupation* in which [they] *customarily and regularly* receive[] more than $30 a month in tips" ("**Tipped Employee**").[17] *See id.* § 203(t) (emphasis added); *see also* 29 C.F.R. § 531.51. For purposes of the Tip Credit, Congress defined "**Wage**" as follows:

> In determining the wage an employer is required to pay a [T]ipped [E]mployee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the [federal

---

*Inc.*, 112 So. 3d 705, 707–08 (Fla. 4th DCA 2013).

[16] Although Plaintiff asserts Counts I and II under the FMWA and Article X respectively, the legal standards applicable to these claims are derived from the FLSA. *See* FLA. CONST. Art. X, § 23 (incorporating the FLSA's tip credit provisions); Fla. Stat. § 448.110(3) (incorporating pertinent provisions of the FLSA "as interpreted by applicable federal regulations and implemented by the Secretary of Labor" ("**Secretary**")).

[17] By classifying an employee as a Tipped Employee and taking the Tip Credit, "an employer can save $5.12 per hour per employee in decreased wages." *See Irvine v. Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 732 (D. S.C. 2015).

> minimum] wage in effect under section 206(a)(1) of this title.

29 U.S.C. § 203(m); *see* 29 U.S.C. § 531.50(a).

These Tip Credit Provisions were not comprehensive or free of ambiguity. Indeed, Congress did not define "occupation" or what it means to "engage" in an occupation from a temporal perspective. Addressing these matters in part, in **1967**, the DOL issued regulations concerning the Tip Credit ("**Tip Credit Regulations**"), which were published in Part 531 of Subchapter A, Chapter V, Subtitle B, Title 29 of the Code. In pertinent part, the Tip Credit Regulations provide that:

(1) employers may take the Tip Credit "only for hours worked by the employee in an occupation in which the employee qualifies" as a Tipped Employee (*see* 29 U.S.C. § 531.59(b) ("**Occupation Regulation**")); and

(2) "an employee is in such an occupation when performing (a) tip-producing activities ("**Tipped Work**");[18] and (b) occasional "related duties" that "need not by themselves be directed toward producing tips ("**Related Work**") (*see* 29 C.F.R. § 531.56(e) ("**Dual Job Regulation**")).

The Dual Job Regulation—which was added to the Tip Credit Regulations after publication in the Federal Register (*see* 32 Fed. Reg. 222) and consideration of comments received from the public (*see* 32 Fed. Reg. 13575, 135780–81)—further explains that Related Work occurs "when a server spends *part of [his] time* cleaning and setting tables, toasting bread, making coffee, and *occasionally* washing dishes or glasses." *See id*.

---

[18]A "tip" is "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 531.52.

-11-

(emphasis added).

Like the Tip Credit Provisions, the Dual Job Regulation was not free of ambiguity with respect to temporal limitations of the Tip Credit. The DOL addressed the remaining ambiguity without engaging in formal notice and comment rule making under the APA. Instead, the DOL clarified the temporal limitation set out in the Dual Job Regulation—that Related Work must be only "*occasional*" and constitute only a "*part of*" a Tipped Employee's work—by publishing the 20% Rule in the Handbook in 1988. *See* DOL Handbook, § 30d00(e) (1988). In particular, the 20% Rule provides that employers may not take the Tip Credit when Related Work consumes "*a substantial amount of time (in excess of 20 percent)*" of the Tipped Employee's work time. *See id*.

Given the ambiguity of the Tip Credit Provisions of the FLSA and the formal steps taken in promulgating the Tip Credit Regulations, the Court rejects Defendant's argument that the Dual Job Regulation is not entitled to *Chevron* Deference. The Court also rejects Defendant's argument that the 20% Rule is not entitled to *Auer* Deference because the Dual Job Regulation is unambiguous. The word "occasional" as a temporal limitation is subject to multiple interpretations, and the 20% Rule provides a reasonable one; thus, the Court agrees with the *Fast* Court that the 20% Rule is not "clearly erroneous" or inconsistent with the pertinent regulations. Finally, given the long and largely undisturbed history of the Tip Credit Regulations in general and the Dual Job Regulation in particular—both in the courts and the DOL[19]—the Court finds that the 20%

---

[19] *See Generally*, Susan N. Eisenberg & Jennifer T. Williams, *Evolution of Wage Issues in the Restaurant Industry*, 30 ABA J. OF LAB. & EMP. L. 389 (2015).

Rule would be entitled to *Skidmore* Deference even if it were not entitled to *Auer* Deference.[20] Having determined that the 20% Rule is entitled to deference as a permissible interpretation of the FLSA, the Court finds that the Motion is due to be denied.

IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant OS Restaurant Services, LLC's Motion to Dismiss Counts I and II and Supporting Memorandum of Law (Doc. 5) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida, this 9th day of May, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record

---

[20] Persuasively arguing that *Auer* Deference should be abandoned, Justice Antonin Scalia notes in his *Perez* dissent that "there are weighty reasons to deny a lawgiver the power to write ambiguous laws and then be the judge of what the ambiguity means." *See Perez*, 135 S. Ct. at 1212–13 (Scalia, J., dissenting). Despite these weighty reasons, Justice Scalia's view has not been embraced by a majority of the Supreme Court. Hence this Court remains obligated to defer to administrative pronouncements under *Auer* and *Skidmore*.